UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS -  AUSTIN DIVISION

| | | |
|---|---|---|
| AUTO PREPURCHASE INSPECTIONS, | § | |
| L.L.C. (d/b/a AUTO P.I. USED CAR | § | |
| INSPECTIONS *d/b/a* LEMON BUSTERS) | § | |
| and JOHN ADAMS, | § | Civil Action No. A08CA0136SS |
|    *Plaintiffs,* | § | |
| v. | § | |
| | § | |
| MICHAEL DICKINSON and AUTO | § | |
| LEMON DETECTORS of AMERICA, | § | |
| LLC, | § | |
|    *Defendants.* | § | |

## DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT

Defendants and Counter Plaintiffs Auto Lemon Detectors of America, L.L.C. and Mike Dickinson (collectively Defendants) file this amended motion for summary judgment for Plaintiffs' claims asserted in Plaintiffs' Second Amended Complaint (Dkt. 63) and their own claims (Dkt. 76).  This amended motion for summary judgment is necessary in light of new claims asserted in Plaintiffs' Second Amended Complaint.

The determinative issue to the parties' claims is priority of use of the disputed trademark. A ruling against Plaintiffs on this issue will decide the causes of action in this matter.  Based on evidence and the agreed preliminary injunction entered on August 12, 2008 (Dkt. 38),[1] there is no material question of fact as to Defendants' priority of trademark use.

With undisputed continuous use dating back to 2001, Defendants are the senior user and owner of the trademarks.  Plaintiffs sold its entire business and all rights to their LEMON trademarks in 2000 and these LEMON trademarks were abandoned by their new owner in 2004.

---

[1] While Plaintiffs' may be quick to point out that Preliminary Injunctions are not generally used as a basis for undisputed facts, the preliminary injunction in this case is not a traditional one—it was negotiated between and agreed to by the parties in this case.  Why would Plaintiffs submit the agreed facts in the Agreed Preliminary Injunction to the Court if it was not the truth?  The court should not discount the findings of fact in the parties Agreed Preliminary Injunction and Plaintiffs should be estopped from denying the truth of a pleading which they signed their names to and submitted to the court.  Nevertheless, all of Defendants' facts in this case are supported by other evidence in addition to the agreed facts in the preliminary injunction (Dkt. 38).

Plaintiffs did not repurchase rights to the LEMON trademarks or continue the goodwill of the former trademark owner.  Plaintiffs did not begin using their new LEMON marks until at least 2007.  The U.S. registration of the abandoned LEMON DETECTOR mark that Plaintiffs purchased in April 2008 was not filed until 2002, after Defendants began using their LEMON marks.  Moreover, the original sole-proprietor owner of the LEMON DETECTOR U.S. registration died in 2005 after abandoning his business in Long Island, New York and retiring to Florida.  Plaintiffs did not continue the goodwill of the business of any prior user of any LEMON marks.  Defendants have clear priority of use and Plaintiffs admit likelihood of confusion.

## BACKGROUND FACTS

On or before November 2001, Defendant, Dickinson began the continuous operation of his auto inspection business under his names and trademarks, AUTO LEMON DETECTORS, LEMON DETECTORS and LEMON LOGO ("Defendants' Marks").[2] Ultimately, Dickinson's business was incorporated as Auto Lemon Detectors of America, L.L.C. in October 2003.[3]

Since 2001, Defendants built up Defendants' Marks with listings in the major San Antonio phone books, business pages and online directories such as www.merchantcircle.com, outdoor signs, vehicle signs, brochures and websites.  Defendants have become known by Defendants' Marks.[4] Dickinson has worked hard to make his business a fixture in the community.[5]  Offering free services for charities and underwriting the National Public Radio's "Car Talk" program, Defendants have become the preferred provider for pre-purchase automotive inspections for local lending institutions and charities.  Defendants' business has also been positively featured in local news media as part of investigative reports on News 4 KMOL

---

[2] Agreed Preliminary Injunction, Docket No. 38 ¶ 1.  *See* Declaration of Michael Dickinson at ¶ and Exhibit A, Dkt. No. 46. A courtesy copy of all exhibits will be provided to the Court.
[3] Agreed Preliminary Injunction, Docket No. 38 ¶ 2; *See* Declaration of Michael Dickinson at ¶ 5 and Exhibit B, Dkt. No. 46.
[4] Agreed Preliminary Injunction, Docket No. 38 ¶ 3
[5] *See* Declaration of Michael Dickinson at ¶ 17.

Troubleshooters.[6]   Moreover,   Defendants   operate   www.autolemondetectors.net   and www.autolemondetectors.org, which provide customers with business information.[7]

Plaintiff Adams began his original business under the name LEMON BUSTERS and incorporated three companies pursuant thereto: LemonBusters, Inc. incorporated on February 28, 1991,[8] LemonBusters – Austin, L.L.C. incorporated on July 6, 1993,[9] and LemonBusters Development Group L.L.C. incorporated February 23, 1994.[10] The three original LEMON BUSTER companies were founded by Plaintiff Adams and his business partner Alfred Barry Sprague.[11] Between them, the three companies used and registered three trademarks: LEMON BUSTERS (U.S. Reg. No. 1,391,181); LEMON BUSTERS plus LOGO (U.S. Reg. No. 2,421,424); and the Lemon Busters LOGO only (U.S. Reg. No. 2,421,426).[12]

In July 2000, Plaintiffs consolidated all assets of its then Lemon Busters businesses and trademarks into one company, LemonBusters Development Group, L.L.C.[13] LemonBusters Development Group, L.L.C. then sold its entire business and LEMON marks to the unassociated third party entity, Inspection Solution Corp. on July 28, 2000.[14] The trademark assignments were recorded in the United States Patent and Trademark Office ("USPTO").[15] Plaintiffs Adams and Mr. Michael Wheeler, former Vice President of Operations, were retained by Inspection Solution

---

[6] *See* Declaration of Michael Dickinson at ¶ 18.

[7] Agreed Preliminary Injunction, Docket No. 38 ¶ 4; *See* Declaration of Michael Dickinson at ¶ 19.

[8] Agreed Preliminary Injunction, Docket No. 38 ¶ 6; *See* Declaration of Charles Hanor at ¶ 3 and Exhibit C, Dkt. No. 46.

[9] Agreed Preliminary Injunction, Docket No. 38 ¶ 6; *See* Declaration of Charles Hanor at ¶ 4 and Exhibit D, Dkt. No. 46.

[10] Agreed Preliminary Injunction, Docket No. 38 ¶ 6; *See* Declaration of Charles Hanor at ¶ 5 and Exhibit E, Dkt. No. 46.

[11] Agreed Preliminary Injunction, Docket No. 38 ¶ 7.

[12] Agreed Preliminary Injunction, Docket No. 38 ¶ 8; *See* Declaration of Charles Hanor at ¶ 6-8 and Exhibits F, G, & H, Dkt. No. 46. Exhibit F has been filed under seal.

[13] Agreed Preliminary Injunction, Docket No. 38 ¶ 9; *See* Declaration of Charles Hanor at ¶ 9 and 10 and Exhibits I & J, Dkt. No. 46. Exhibit I has been filed under seal.

[14] Agreed Preliminary Injunction, Docket No. 38 ¶ 9; *See* Declaration of Charles Hanor at ¶ 11 and Exhibit K, , Dkt. No. 46 herewith under seal.

[15] Agreed Preliminary Injunction, Docket No. 38 ¶ 10; *See* Declaration of Charles Hanor at ¶ 12 and 13 and Exhibits L and M, Dkt. No. 46. Exhibit L has been filed under seal.

Corp. for a short time.[16]  Plaintiffs signed a covenant not to compete in the vehicle inspection business for a term of 5 years from July 28, 2000.[17] LemonBusters Development Group, L.L.C. was dissolved with the State of Texas in December 2000.[18] Plaintiffs Adams and the companies he owned or controlled agreed to cease and did cease all use of the LEMON BUSTERS and LEMON logo names and marks after their July 28, 2000 sale.

In 2001 after Adams' original Lemon Busters business was sold, Michael Wheeler left Inspection Solutions and formed a new corporation, Auto PrePurchase Inspections, LLC, d/b/a AUTO P.I., which was incorporated under the laws of Texas on September 13, 2001 and later changed its name to Auto P.I. Used Car Inspections, LLC.[19] Though violating his covenant not to compete, Adams surfaced as the real owner of AUTO P.I. before January 30, 2004.[20] Adams involvement with Auto P.I. did not go unnoticed by Inspection Solutions Corp. and on July 26, 2004 they sent Adams a letter asserting he had violated his covenant not to compete.[21] In response, Adams admitted to being a part of Auto P.I. and admitted that Auto P.I. was not using the LEMON BUSTERS name or LEMON logo.[22]

After the acquisition in 2000, Inspection Solution Corp. continued the LEMON BUSTERS business including use of the LEMON BUSTERS trademarks.[23] Inspection Solution Corp. defended the LEMON BUSTERS name and lemon logo and asserted ownership rights in

---

[16]Agreed Preliminary Injunction, Docket No. 38 ¶ 11; *See* Declaration of Charles Hanor at ¶ 14 and 15and Exhibits N and O, , Dkt. No. 46 filed under seal.

[17] Agreed Preliminary Injunction, Docket No. 38 ¶ 12; *See* Declaration of Charles Hanor at ¶ 16 and 17 and Exhibits P and Q, Dkt. No. 46 filed  under seal. Adams was later found in violation through his involvement with Plaintiffs Auto P.I. as evidenced by the letter sent by Inspection Solution, Inc.

[18] Agreed Preliminary Injunction, Docket No. 38 ¶ 13; *See* Declaration of Charles Hanor at ¶31 and Exhibit OO, Dkt. No. 46.

[19] Agreed Preliminary Injunction, Docket No. 38 ¶ 14; *See* Declaration of Charles Hanor at ¶ 32-33 and Exhibits R and S, Dkt. No. 46.

[20] Agreed Preliminary Injunction, Docket No. 38 ¶ 15; *See* Declaration of Charles Hanor at ¶ 34 and Exhibit T, Dkt. No. 46.

[21] Agreed Preliminary Injunction, Docket No. 38 ¶ 16; *See* Declaration of Charles Hanor at ¶ 17 and Exhibits Q and SS, Dkt. No. 46.

[22] Agreed Preliminary Injunction, Docket No. 38 ¶ 17, *Id.*

[23] *See* Declaration of Charles Hanor at ¶ 19 and Exhibit W, , Dkt. No. 46 filed under seal.

the marks until about 2004.[24]    Around 2004, Inspection Solution Corp. ceased use of the trademarks and abandoned all use of the three LEMON BUSTERS trademarks and ultimately the U.S. trademark registrations were canceled by the USPTO because the required declaration of continued use was not filed.[25]

Prior to the USPTO's cancellation of registration no. 1,391,181 for LEMON BUSTERS, Plaintiffs filed a new application, 78/973,281, for LEMON BUSTERS on September 13, 2006.[26] Despite having sold all rights to the name LEMON BUSTERS and Lemon logo, never repurchasing the trademarks, and not continuing the business of Inspection Solution Corp.,[27] Plaintiffs alleged a date of first use of January 11, 1985 in its 2006 application.  Plaintiffs also filed two more trademark applications covering the same subject matter as the trademarks and registrations that Inspection Solution, Corp. abandoned: application 77/084,520 for the LEMON BUSTERS name and logo filed on January 17, 2007; application 77/404,810 for the LEMON logo filed on February 25, 2008.  Both applications claimed an inaccurate first date of use of January 2, 1990 despite Plaintiffs' prior sale.[28]  Defendants have filed opposition proceedings against trademark applications 78/973,281, 77/404,810, and 77/084,520 and the USPTO has suspended the applications pending the outcome of this suit.[29]

Since this lawsuit was filed at the end of 2007, Plaintiffs has gone further to encroach on Defendants' goodwill and customer base through the acquisition of an abandoned name and mark. Plaintiffs sought and acquired the LEMON DETECTOR federal trademark registration

---

[24] *See* Declaration of Charles Hanor at ¶ 23-25 and Exhibits BB, CC and DD, , Dkt. No. 46 filed under seal.
[25] Agreed Preliminary Injunction, Docket No. 38 ¶¶ 20-22; *See* Declaration of Charles Hanor at ¶ 17, 18, 20-22 and 29 and Exhibits Q, V, X, Y, Z and AA,Dkt. No. 46Exhibits X, Y and AA have been filed under seal.
[26] *See* Declaration of Charles Hanor at  ¶ 38 and Exhibit TT, Dkt. No. 46
[27] Agreed Preliminary Injunction Docket No. 38, ¶ 10.
[28] *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004) (holding that an individual that sold his mark along with the business cannot later sue for trademark infringement and that his rights went abandoned after the purchase).
[29] *See* Declaration of Charles Hanor at ¶ 39 and Exhibit VV.

(Reg. No. 2,823,132) on April 2, 2008 from the widow of the late Mr. Daniel B. Koebel.[30] The registration was filed September 27, 2002 by Daniel B. Koebel listing his home address of 114 Ralph Avenue, North Bellmore, NY 11710 as his place of business in Long Island, New York.[31] In August of 2005, Koebel permanently moved his residence to 1326 Hatcher Loop Drive, Brandon, Florida 33511-9370. Prior to Koebel's death on September 4, 2005, he had ceased to operate any business under the name LEMON DETECTOR. Obviously, Mr. Koebel did not operate any business after he died.  Plaintiffs Adams also purchased the dormant domain name www.lemondetector.com, in April 2008 from Denise Brock (formerly Denise Koebel), Daniel B. Koebel's alleged heir and widow.[32]

Ms. Brock never operated any auto inspection business under the name LEMON DETECTOR. Defendants subpoenaed Mrs. Brock and the Estate of Daniel B. Koebel.  Initially, Ms. Brock responded to the subpoena with only a copy of a "consulting agreement" between her and Mr. Adams, an assignment of the trademark LEMON DETECTOR and a letter stating that these were "the only documentation in [her] possession relating to 'Lemon Detector.'"[33]  Later, she asserted in a sworn declaration that she retained "signage, business notes, client information, and similar tangible property of the business" that she had not turned over in response to Defendants' subpoena.  Naturally, Defendants filed a Motion to Compel in the United States District Court in Tampa, Florida where Ms. Brock resides.  In response Ms. Brock produced only thirteen (13) pages of documents consisting of ten (10) invoices from 1996, one (1) invoice from

---

[30] Agreed Preliminary Injunction, Docket No. 38 ¶ 25 and Exhibit EE, Dkt. No. 46
[31] Agreed Preliminary Injunction, Docket No. 38 ¶ 26. Koebel owned an initial registration for LEMON DETECTOR (Reg. No. 1,936,107) which was canceled August 17, 2002 which destroyed the constructive notice over Defendant. *Action Temporary Services, Inc. v. Labor Force*, Inc., 870 F.2d 1563, 1566 (Fed. Cir. 1989) ("Once a federal registration is canceled the priority established by a federal registration is lost. However, a canceled registration does not provide constructive notice of anything. A canceled registration cannot prevent a party from being a 'lawful user' of a mark when that party's use is subsequent to the cancellation of the federal registration.").
[32] Agreed Preliminary Injunction, Docket No. 38 ¶ 28; *See* Declaration of Charles Hanor  at ¶ 35
[33] *See* Declaration of Charles W. Hanor at ¶ 27-28 and Exhibit RR, Dkt. No. 46, and Exhibit FFF.

2005, and one (1) picture of a sign with a Long Island, NY telephone number.  Ms. Brock refused to produce the business' tax records despite the Florida Court order to do so.

The limited documents produced by Ms. Brock are not sufficient to demonstrate continuous trademark use from 2002 until 2008.  Accordingly, there were no trademark rights or goodwill left for Brock to assign to Plainitffs in April of 2008 because Daniel Koebel's business and trademarks were abandoned before his death and move to Florida in 2005.[34] Adams did not continue the goodwill of Koebel's business that might have existed in Long Island, New York— he merely slapped the LEMON DETECTOR name on his existing Auto P.I. business. Moreover, the LEMON DETECTOR registration was filed on September 27, 2002, approximately a year after the Defendants acquired common law rights by operating as and using Defendants' Marks.[35] A federal registration does not usurp the prior existing and superior common law trademark rights of Defendants.[36]

After acquisition of the Federal registration for the abandoned trademark in April of 2008, Plaintiffs began using Defendants' name, LEMON DETECTOR, in the San Antonio and Austin areas in a calculated campaign to palm off, confuse, deceive and pirate Defendants' customers.[37]  That campaign ultimately resulted in the agreed preliminary injunction entered by the Court on August 12, 2008 (Dkt. 38) wherein Plaintiffs were preliminarily enjoined from using LEMON DETECTOR.  Despite the preliminary injunction, Plaintiffs have not stopped using LEMON BUSTERS in San Antonio as detailed in the Defendants' Motion for Contempt

---

[34] *Cf. Procter & Gamble Co. v. Johnson & Johnson, Inc.*, 485 F. Supp. 1185 (S.D.N.Y. 1979) (holding that nominal use of a trademark is not real use and is therefore not strong enough to keep the trademark from going abandoned).
[35] Agreed Preliminary Injunction, Docket No. 38 ¶ 29.
[36] 15 U.S.C. § 1115(b)(5); *see Thrifty Rent-A-Car System v. Thrift Cars, Inc.*, 831 F.2d 1177 (1st Cir. 1987) (holding the limited area exception provides protection to a common law user of a mark if they can establish use prior to the federal registration).
[37] *See* Agreed Preliminary Injunction, Docket No. 38 ¶ 30 (stating Plaintiffs began using the name Lemon Detector after April 2008).

which will be filed.  Defendants are being damaged by Plaintiffs' ongoing infringement and unfair competition in San Antonio.

## STANDARDS FOR SUMMARY JUDGMENT

The purpose of a motion for summary judgment is to determine whether there exist genuine issues of material fact to be tried.[38]  Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[39]  A factual issue is material if its resolution could affect the outcome of the action and disputes about such factual issues are genuine if the evidence would allow a reasonable jury to find for the non-moving party.[40]

A non-moving party may not rely upon mere conclusory allegations to overcome a motion for summary judgment as such allegations are insufficient and not competent summary judgment evidence.[41]  Federal Rules of Civil Procedure 56(e)(1) requires that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated."[42]  Moreover, any "paper or part of a paper which is referred to in an affidavit" must be attached to and served with the affidavit.[43]  Thus, in responding to Defendants' motion for summary judgment, Plaintiffs must do more than simply show that there is some "metaphysical doubt" as to the material facts.[44]

---

[38] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[39] FED. R. CIV. P. 56(c).
[40] *GeoSouthern Energy Corp. v. Chesapeake Operating, Inc.*, 274 F.3d 1017, 1020 (5th Cir. 2001).
[41] *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).
[42] FRCP 56(e)(1).
[43] *Id.*
[44] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

**ARGUMENT**

Plaintiffs and Defendants agree that "Defendants is likely to succeed on the merits of its case."[45]   Accordingly, a finding of the same in this Summary Judgment motion should be simple.

I.   **DEFENDANTS' PRIORITY OF USE EFFECTIVELY DISPOSES OF MOST OF BOTH PARTIES' CAUSES OF ACTION**

The determinative issue of the causes of action alleged in both Plaintiffs' Second Amended Complaint and Defendants' Third Amended Answer and Counterclaim is priority of trademark use.  As established above, Defendants have priority of over five years over Plaintiffs, which is documented through hundreds of invoices and bills using Defendants' marks.  This one fact is determinative of the causes of action in this matter.

In response to Defendants' clear and documented priority of use, Adams attempts to defeat summary judgment with undocumented hearsay statements of alleged use prior to 2007. In order to survive this motion, however, Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts."[46]   Adams cannot just make the evidence up— "[w]hen opposing parties tell 2 different stories, 1 of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[47]

Indeed, the law insures that Mr. Adams cannot make up an after-the-fact alleged oral trademark use.  Since Adams has zero evidence of any use or advertising of LEMON BUSTERS in his business records prior to 2007, he asserts that when he surreptitiously operated under the name AUTO PI from 2001, he and his employees answered the telephone as LEMON BUSTERS even though the sole name of his business was AUTO PI.  There is no offering or proof of who allegedly made the oral statements and when and to whom these hearsay statements

---

[45] Agreed Preliminary Injunction, Docket No. 38 ¶ 37.
[46] *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007).
[47] *Id.*

were made from 2001 to 2007.  Defendants have no way of challenging or cross-examining this alleged oral and hearsay trademark that occurred 8 years ago.

The Federal Rules of Evidence have a shield against such unreliable and unverifiable oral evidence—the rules against hearsay.[48]  FRE 802 "is premised on the theory that out of court statements are subject to particular hazards" such as lying, misperception, and faulty memory.[49]  Accordingly, FRE 802 provides that hearsay is generally inadmissible.  Thus, hearsay statements of Plaintiffs' alleged oral use of the LEMON BUSTERS name when answering phones and operating solely under the name AUTO PI, are not competent summary judgment evidence because they would not be admissible at a trial on the merits.[50]  There is no admissible evidence to show any oral use of LEMON BUSTERS by Plaintiffs when it operated solely as AUTO PI prior to 2007.

Moreover, even if Plaintiffs' testimony of its alleged oral statements were admissible, the court should still not give them any weight because Plaintiffs have provided no law supporting their position that alleged mere oral trademark use to answer the telephone for a differently named business is sufficient to confer priority of trademark use.  Recently, in *George & Co., LLC v. Imagination Entm't Ltd.*[51] the Eastern District of Virginia considered a summary judgment argument identical to Plaintiffs' hearsay evidence of oral use.  The court held that a non-moving party cannot successfully survive summary judgment by establishing the mere existence of a scintilla of evidence in support of the party's position; to the contrary, the party must put forth evidence on which the jury could reasonably find for that party and stated:

> Likewise, George's argument that it has acquired rights to the mark through its own "verbal" use of the mark has no legal or factual support. Aside from a

---

[48] FRE 801-804.
[49] *Williamson v. U.S.*, 512 U.S. 594, 598 (1994).
[50] *See, e.g., Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, n.5 (5th Cir. 2001); *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).  It is worth noting that these alleged uses are also contradicted by other evidence.
[51] 2008 U.S. Dist. LEXIS, 1:07cv498, *27-28 (E.D. Va. Jul 25, 2008).

declaration by George's president made after Imagination filed its summary judgment motion, George has presented no evidence of "verbal" use. More importantly, however, George has provided no legal authority for the proposition that its own verbal use of the words "left center right" can support a claim for ownership of LEFT CENTER RIGHT, absent actual use of the mark on one's products.[52]

This is in accord with *Gen. Health Care Ltd. v. Qashat*[53] in which the court held that use must be "open and notorious" to create trademark rights.[54] Accordingly, the Court should not consider Plaintiffs alleged surreptitious use of the LEMON DETECTOR mark to answer the telephone of his business that solely advertised as AUTO P.I.

### A. *Trademark Infringement, False Designation of Origin, and Unfair Competition (Plaintiffs' counts 2, 4, 6, 7 and Defendants' counts I, II, III, VII)*

To prevail on a claim trademark infringement, false designation of origin, and unfair competition, Defendants must show "evidence of ownership in the marks coupled with a use in commerce by the [Plaintiffs] that is unauthorized and is likely to cause confusion in the minds of potential consumers as to the source of the goods."[55]  In order to establish common law rights in a trademark, a party must show it owns a protectable mark, is the senior user of the mark and there is a likelihood of confusion.[56] Defendants' Marks are protectable because they fall under the suggestive category of trademark protection.[57] Defendants has used AUTO LEMON DETECTORS and LEMON DETECTORS and a LEMON LOGO in commerce since November 2001, thus establishing Defendants' common law trademark rights, predating Plaintiffs' use.[58]

---

[52] Id.

[53] 254 F. Supp. 2d 193, 200-201 (D. Mass. 2003).

[54] *Id.*

[55] *Philip Morris USA, Inc. v. Lee*, 2008 U.S. Dist. LEXIS 39351, at *12 (W.D. Tex. Mar. 6, 2008); *accord* Lanham Act § 43(a), 15 U.S.C. § 1125(a) (2000).

[56] *Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 844 (5th Cir. 1990).

[57] *See id.* at 844-45 (noting suggestive trademarks are protectable without a showing of secondary meaning and utilizing the example of "Penguin" for the name of a refrigerator is suggestive).

[58] *See* Declaration of Michael Dickinson at ¶ 4, 16 and 22 and Exhibits A, LL and WW , Dkt. No. 46. Exhibit WW filed under seal.; *See* Declaration of Charles Hanor at ¶17 and Exhibit Q, , Dkt. No. 46; Agreed Preliminary Injunction, Docket No. 38, ¶ 17.

"Likelihood of confusion exists when 'customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'"[59] In general, use of a trade name or mark that even suggests a connection with a service mark's owner is service mark infringement.[60] In the instant case, Plaintiffs admits that a likelihood of confusion exists between the two parties' marks and the parties are directly competitive.[61] Indeed, the actual services of Plaintiffs and Defendants are identical.

The Lanham Act also prohibits use of a mark or trade name which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . or as to the origin, sponsorship, or approval of his or her goods, service, or commercial activities of another person."[62] Similar to the false designation of origin claim, "the basic test under every type of unfair competition is the likelihood of confusion test"[63] discussed above. Accordingly, Defendants is entitled to summary judgment as a matter of law establishing Plaintiffs' liability and Defendants non-culpability.

Texas common law trade name infringement and common law unfair competition largely follow the same requirements as federal trademark infringement and unfair competition. The elements that must be established to prove common law unfair competition and common law trademark infringement are: (1) the mark is protectable; (2) it is the senior user of the mark; and (3) the competitor's name or mark would be likely to confuse the public.[64] The federal courts in Texas agree that common law infringement and unfair competition so closely follow federal law

---

[59] *Kendall-Jackson Winery Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1048 (9th Cir. 1998).
[60] *See Oleg Cassini, Inc. v. Cassini Tailors, Inc.*, 764 F. Supp. 1104, 1108 (W.D. Tex. 1990) (citing *Professional Golfers Assoc. of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 669-70 (5th Cir. 1975).
[61] First Amended Complaint, Docket No. 17-3, ¶¶ 47-52; Agreed Preliminary Injunction, Docket No. 38, ¶ 24.
[62] 15 U.S.C. § 1125(a)(1)(A).
[63] *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703 (5th Cir. 1981); *see also Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 483 (5th Cir. 2004).
[64] *All Am. Builders, Inc. v. All Am. Siding, Inc.*, 991 S.W.2d 484, 488 (Tex. App.--Fort Worth 1999, no writ); *Thompson v. Thompson Air Conditioning & Heating, Inc.*, 884 S.W.2d 555, 558 (Tex. App.--Texarkana 1994, no writ).

that they can be analyzed under the same standard of likelihood of confusion.[65] For the reasons described and under the authorities cited above, Plaintiffs' acts constitute trademark infringement and unfair competition under the common law of the State of Texas and Defendants is entitled to a summary judgment on Plaintiffs liability and Defendants' non-culpability.

> **B.      Common Law Palming Off (Defendants' count IV)**

To demonstrate a cause of action for common law palming off, Defendants must be the first user and must demonstrate that (1) its mark is distinctive or acquired secondary meaning; (2) Plaintiffs' use of the mark is likely to cause confusion; and (3) the Plaintiffs' actions must be fraudulent, intentional, or in bad faith.[66] Defendants' Marks are inherently distinctive due to their significant use and advertising and Plaintiffs' use of the Defendants' Marks is likely to cause confusion. Furthermore, Plaintiffs purposefully chose the names LEMON BUSTERS and LEMON DETECTOR and LEMON logo to cause confusion and pass off their services as those of the Defendants.   As a result, Defendants is entitled to a summary judgment on Plaintiffs' liability.

> **C.      False Advertising (Plaintiffs' Count 2 and Defendants' count V)**

The Fifth Circuit has established five elements of false advertising: "(1) A false or misleading statement of fact about a product; (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) The deception was material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The Plaintiffs has been or is likely to be injured as a result of the

---

[65] *See Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 484 (5th Cir. 2004) ("The likelihood of confusion standard also governs . . . claims for trademark infringement and unfair competition under Texas law."); *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) ("A determination of a likelihood of confusion under federal law is the same as the determination of a likelihood of confusion under Texas law for a trademark infringement claim").
[66] *Marshall Mfg. Co. v. Verhalen*, 163 S.W.2d 665, 667 (Civ. App.--Dallas 1942, ref.); *see also Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1191 (5th Cir. 1980).

statement at issue."[67]

Prior to the preliminary injunction, Plaintiffs' website stated "Lemon Detector is now Auto P.I. Used Car Inspections."[68] This is a literally false statement as Plaintiffs has never operated under the name Lemon Detector and Defendants have not merged with Auto P.I. Moreover, Plaintiffs listed itself as "Lemon Detector – Auto P.I." in advertisements despite also having advertisements in their real name, Auto P.I.[69] Once the Defendants establishes the literal falsity of the Plaintiffs' advertisements, "the court will assume that the statements actually misled consumers."[70] Accordingly, Defendants need not show any actual consumer confusion to prove its cause of action for false advertising.

Conversely, Plaintiffs' claim for false advertising is baffling.  Plaintiffs' complaint alleges false advertising based on Defendants' use of

> metatag keywords for 'lemonbusters' in Defendant's [sic] website and a statement on Defendant's about or referring to Plaintiff and Plaintiff as 'Lemon Busters', [sic] which is likely to cause confusion, or to mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin sponsorship, or approval of Defendant's [sic] goods, services or commercial activities or, in commercial advertising or promotion, misrepresents the nature, characteristics, or qualities of Defendant's [sic] or Plaintiff's [sic] services or commercial activities.

As explained above, false advertising requires a false or misleading statement of fact about a product.[71]  Defendants' website does not contain any false or misleading statements of fact. Moreover, the metatags and pages on Defendants' website referring to "lemonbusters" or lemon busters have been there since before Plaintiffs began open and notorious use of the name Lemon Busters in 2007.[72] Use of the tag "lemonbuster" prior to Plaintiffs' first use of the name cannot

---

[67] *IQ Prods. Co.*, 305 F.3d at 374.
[68] Agreed Preliminary Injunction, Docket No. 38, ¶¶ 31-34 and Exhibit FF, Dkt. No. 46.
[69] *See* Declaration of Michael Dickinson at ¶ 13-15 and Exhibits II, JJ, KK, Dkt. No. 46; Agreed Preliminary Injunction, Docket No. 38, ¶¶ 33-34.
[70] *Id.*
[71] *IQ Prods. Co.*, 305 F.3d at 374.
[72] Declaration of Michael Dickinson at ¶ 23.

possibly constitute false advertising harming Plaintiffs.

###        D.        Trademark Dilution (Plaintiffs' count 5 and Defendants' count VI and VII)

In Texas, in order "[t]o maintain a dilution claim, the Plaintiffs must establish (1) ownership of a distinctive mark, and (2) a likelihood of dilution."[73]   As pointed out above, ownership means being the first user.  The Federal requirement is substantially similar.[74]  Texas and Federal law define dilution as encompassing blurring or tarnishing.[75]   "Blurring is a diminution in the uniqueness and individuality of a mark or trade name . . . [and] occurs only when the Plaintiffs' trade name is used by another as his own trade name, thereby weakening the Plaintiffs' ability to use the name as a unique identifier of its goods and services."[76]

The Supreme Court has held trademarks that are suggestive, arbitrary, or fanciful "are deemed inherently distinctive . . . because their intrinsic nature serves to identify a particular source of a product."[77]  Defendants' Marks are protectable under the Texas dilution statute because they at least fall under the suggestive category of trademark protection.[78]   Additionally, Defendants Marks have acquired secondary meaning because of Defendants' extensive advertising and the positive reputation.  Defendants can no longer uniquely identify its services as AUTO LEMON DETECTORS and LEMON DETECTORS because the Plaintiffs is utilizing both identical and confusingly similar names.  Plaintiffs Adams himself alleged the confusingly

---

[73] *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 811 (Tex. App. Austin 2001) (pet. denied); *see also* Tex. Bus. & Com. Code § 16.29 ("A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark . . . valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.").
[74] 15 U.S.C. § 4458(c).
[75] *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir. 1997); *Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App. Dallas 2001); see also E. & J. Gallo Winery v. Spider Webs, Ltd., 286 F.3d 270, 279 (5th Cir. 2002) (stating that Texas law on anti-dilution is not well settled and the Fifth Circuit has looked at "the general law of dilution . . . in construing the Texas Statute").
[76] *Express One* at 899 (citing *E. & J. Gallo Winery v. Spider Webs LTD.*, 129 F. Supp. 2d 1033, 1038 (S.D. Tex. 2001)).
[77] *Two Pesos v. Taco Cabana*, 505 U.S. 763, 768 (1992).
[78] *See Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 844-45 (5th Cir. 1990) (noting suggestive trademarks are protectable without a showing of secondary meaning and utilizing the example of "Penguin" for the name of a refrigerator is suggestive).

similar nature of his marks and the Defendants' marks.[79]  The Plaintiffs is undeniably utilizing the Defendants' marks in its own advertisements and has done so after the Defendants began using the marks.[80]

The Fifth Circuit has recognized "that when a [Plaintiffs] prevents a [Defendants] from identifying its goods and services on the internet, this constitutes dilution."[81]  The Plaintiffs have admitted to procuring and utilizing websites that prevent the Defendants from advertising its services.   The Plaintiffs operated www.autolemondetector.com, www.lemondetector.com, www.lemondetectors.com and www.lemonbusters.com and acquired them all at least five years after Defendants began utilizing its marks in commerce[82] and at least 3 years after Plaintiffs had actual knowledge of the Defendants.[83]  As a matter of law the Plaintiffs has diluted the Defendants' marks under Tex. Bus. & Com. Code § 16.29.

Conversely, Plaintiffs' dilution claim must fail.  Both the Federal Trademark Dilution Act (FTDA) and common law trademark dilution require the Plaintiffs to "that [Defendants] adopted its mark after [Plaintiffs'] had become famous and distinctive."[84]  Because Plaintiffs is the admitted junior user of the contested marks, it cannot sustain a claim for trademark dilution.[85]

### E.    Federal Cybersquatting (Defendants' Count XII)

Priority of use is also central in determining whether Plaintiff is liable for cybersquatting under §43(d) of the Lanham Act.   To succeed under the Anti-Cybersquatting Consumer Protection Act (ACPA), Defendants must prove "(1) [they] ha[ve] a valid trademark entitled to

---

[79] Agreed Preliminary Injunction, Docket No. 38, ¶ 24.
[80] Agreed Preliminary Injunction, Docket No. 38, ¶¶ 1, 17, 25, 30-34.
[81] E. & J. Gallo Winery v. Spider Webs, Ltd., 286 F.3d 270, 278 (5th Cir. 2002).
[82] Agreed Preliminary Injunction, Docket No. 38, ¶¶ 1, 28, 30-31.
[83] See Declaration of Charles Hanor at ¶17 and Exhibit Q, Dkt. No. 46.
[84] Westchester Media v. PRL USA Holdings, Inc., 214 F.3d 658, 669 (5th Cir. 2000).
[85] See Ultimate Living Int'l, Inc. v. Miracle Greens Supplements, Inc., 2007 U.S. Dist. LEXIS 102 (N.D. Tex. Jan. 3, 2007) (applying Texas law the Court held that a fact issue may exist when the junior users mark is similar but not identical to the senior users mark).  In the present case, the marks are identical in regard to Lemon Detector and the Plaintiffs has admitted the other marks are confusingly similar.  As a matter of law, the Plaintiffss' marks are diluting the Defendant's marks and the Plaintiffs cannot sustain a claim of dilution when they are the liable party.

16

protection; (2) [their] mark is distinctive or famous; (3) the [Plaintiffs'] domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the [Plaintiffs] used, registered, or trafficked in the domain name (5) with a bad faith intent to profit."[86] Defendants' have demonstrated elements (1), (2), (3), and (4) above and need only address element (5), bad faith, below.

As discussed previously, it is obvious that Plaintiffs' sole motive in its websites was to tell customers that "Lemon Detector is now Auto P.I. Used Car Inspections"[87] when in reality the Plaintiffs has never operated under that name. The websites were created after litigation began, proving the Plaintiffs knew of the Defendants' mark. Plaintiffs is trying to misappropriate the goodwill of Defendants' business while simultaneously destroying the Defendants by stating "Lemon Detector is now Auto P.I. Used Car Inspections"[88]

After the Preliminary Injunction was entered in this case, Plaintiff changed their websites to no longer say "Lemon Detector is now Auto P.I. Used Car inspections but Plaintiff still maintains ownership of the domain names www.lemondetector.com, www.autolemondetector.com, and www.lemondetectors.com since April 2008 and www.lemonbusters.com since late 2007 and www.lemonbusters.com still states "Lemon Busters is now Auto P.I."  The Plaintiffs' sole intent is to drive as many of Defendants' legitimate customers as possible to Plaintiffs' websites instead of to Defendants' proper websites of www.autolemondetectors.org and www.autolemondetectors.net.

---

[86] *DaimlerChrysler v. Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004); *see* 15 U.S.C. § 1125(d)(1)D); *TMI Inc. v. Maxwell*, 368 F.3d 433, 436 (5th Cir. 2004) (stating the "owner of a mark" has an ACPA cause of action "against a person who, acting with a bad faith intent to profit from that mark . . . registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to that mark.") (internal quotations omitted).
[87] *See* Declaration of Michael Dickinson at ¶ 9 and Exhibit FF, Dkt. No. 46.
[88] *Id.*

### F. Cancellation of Federal Trademark Number 2823132 (Defendants' count XIII)

The LEMON DETECTOR registration purchased by Plaintiffs after the start of this lawsuit is rife with problems. First, the trademark application filing date is 2002—*after* Defendants began using its marks.[89] Even if the actual registrant, the late Daniel B. Koebel, utilized the mark before registration, his common law rights would have only extended to his small trade area in Long Island, New York.[90] Moreover, when the owner and original registrant of the LEMON DETECTOR mark abandoned his inspection business before he moved to Florida and died in 2005, any auto inspection business and related goodwill died with him and his sole proprietorship.[91]

"The sale or assignment of a trademark registration without the goodwill that the mark represents is called an assignment in gross and is invalid."[92] Since trademark registrations are based on use, they are subject to cancellation when use ceases. Thus, due to the discontinuation of the LEMON DETECTOR business prior to Koebel's death in 2005, the Plaintiffs could not have acquired any rights or goodwill of any LEMON DETECTOR mark from Koebel's widow in April 2008. Nor does Plaintiffs have priority as to its LEMON BUSTERS name over Defendants' Marks. As explained above, Plaintiffs can only claim a priority date of 2007 as its date of first use.[93] Because Defendants have been using its marks since at least 2001, Defendants

---

[89] *See* 15 USCS § 1115(b)(6) (allowing a prior user a defense against infringement if they continuously used the mark prior to another's registration).

[90] *See also Action Temporary Services*, 870 F.2d at 1566 ("Once a federal registration is canceled the priority established by a federal registration is lost. However, a canceled registration does not provide constructive notice of anything. A canceled registration cannot prevent a party from being a 'lawful user' of a mark when that party's use is subsequent to the cancellation of the federal registration.")

[91] *See Defiance Button Machine Co. v. C & C Metal Products Corp.*, 759 F.2d 1053, 1060 (2d Cir. 1985) ("Since the purpose of a mark is to protect the goodwill of a business, a right in the mark is created by its adoption and use in connection with that business, and if there is no business there is no goodwill and therefore nothing to protect").

[92] *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999).

[93] *See* Declaration of Michael Dickinson at ¶ 21 and Exhibit LL, Dkt. No. 46 .

have priority of use over Plaintiffs.[94]   As such, the court should cancel Plaintiffs' LEMON

DETECTOR registration.

> ### G.   Plaintiffs Trademark Applications Should be Denied as a Matter of Law (Defendants' counts IX, X, and XI)

"[A] party opposing a registration pursuant to Section 13 of the Lanham Act must show

(1) that he has standing and (2) a statutory ground which negates the applicant's entitlement to

registration."[95]   Defendants has clearly established standing to file an opposition to trademark

applications 78/973,281, 77/084,520, and 77/404,810 because the Defendants will be harmed by

the registration of those marks as evidenced by this lawsuit.[96]

Likelihood of confusion is a recognized ground for opposition to a trademark

application.[97]   To succeed on an opposition based on likelihood of confusion, the opposer must

"prove priority of use and likelihood of confusion."[98] In the instant case, the Plaintiffs have

admitted that Defendants are the senior user of the marks[99] and Plaintiffs have alleged that the

marks in the opposed applications of Plaintiffs are confusingly similar to the marks of the

Defendants.[100]   Accordingly, the Court should order the USPTO to deny registration of the marks

in all three applications of Plaintiffs.

Plaintiffs Adams filed trademark applications 78/973,281, 77/084,520, and 77/404,810

with false dates of first use.  Dates of first use are determinative in a conflict between concurrent

applications or opposing parties, such as the present case.  Plaintiffs admits to selling the

LEMON BUSTER'S goodwill with the associated marks in 2000 and admits those same marks

---

[94] *See* Declaration of Charles Hanor at ¶ 17 and Ex. Q, Dkt. No. 46.
[95] *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998).
[96] 15 U.S.C. § 1063(a); Young v. AGB Corp., 152 F.3d 1377, 1379 (Fed. Cir. 1998) (holding the statutory language for standing is broad and is allowed based on perceived harm by the opposer).
[97] Bose Corp. v. QSC Audio Prods., 293 F.3d 1367 (Fed. Cir. 2002).
[98] *Transcend Logistics, Inc. v. Transflo Corporation*, 2006 TTAB LEXIS 70 (Trademark Trial & App. Bd. Feb. 24, 2006) (citing *Bose Corp. v. QSC Audio Prods.*, 293 F.3d 1367, 1370 (Fed. Cir. 2002)).
[99] Invoice dates Nov 2001 and March 3 2003; Agreed Preliminary Injunction, Docket No. 38, ¶ 1.
[100] Agreed Preliminary Injunction, Docket No. 38, ¶ 24.

became abandoned by 2005.[101]   Once abandoned, all prior dates of first use are no longer applicable and the mark becomes available to the first new user in the marketplace.[102] Trademark rights are dependent upon continued use of a mark in commerce and mere token sales do not preserve an individual's rights to the mark.[103]

Additionally, "the improper use of a registration notice in connection with an unregistered mark, if done with intent to deceive the purchasing public or others in the trade into believing that the mark is registered, is a ground for denying the registration of an otherwise registrable mark."[104]   The Plaintiffs have a pattern of deception to the public and competitors through letters and displays in advertisements.  Plaintiffs even attempted to mislead the court by improperly marking the Lemon Busters name and logo as registered in the original complaint filed in this case.[105]   The evidence from the applications, the trademarks themselves, internet websites, and court documents, is conclusive to show the Plaintiffs is improperly marking the Lemon Busters name and logo as registered.

The mismarking of the Plaintiffs' marks was intentional and done with the intent to deceive.  Plaintiffs' original complaint stated that Lemon Busters had been federally registered since 1985.[106]   Defendants had to undertake research, at considerable expense, to determine the marks are in fact only applications *and not* registered marks.  The present lawsuit is not the first time the Plaintiffs has attempted to bully individuals or companies.  There are numerous letters

---

[101] Agreed Preliminary Injunction, Docket No. 38, ¶¶ 10, 20-22.

[102] *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) (explaining that when a mark becomes abandoned it "returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace"); *see also Action Temporary Services, Inc. v. Labor Force, Inc.*, 870 F.2d 1563, 1566 (Fed. Cir. 1989) ("Once a federal registration is canceled the priority established by a federal registration is lost. However, a canceled registration does not provide constructive notice of anything. A canceled registration cannot prevent a party from being a 'lawful user' of a mark when that party's use is subsequent to the cancellation of the federal registration.").

[103] *See e.g. Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1267 (5th Cir. 1975) (establishing that mere token sales are not sufficient to establish a date of first use and priority in a trademark infringement action).

[104] *Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991).

[105] Even Plaintiff admits his original complaint was full of inaccuracies.  *See* letter from Adams to Dicknson, Declaration of Michael Dickinson at ¶ 25 and Exhibit DDD.

[106] Original Complaint, Docket No. 1, ¶ 6-11.

in which Plaintiff Adams wrongfully claims to own federal registrations for the LEMON BUSTERS name and logo.[107]  Plaintiffs did not mistakenly mismark the symbols a few times, instead Plaintiffs acted as if he owned the complete rights from even prior to filing applications.

## II.  PLAINTIFFS' BUSINESS DISPARAGEMENT AND DEFAMATION CLAIMS ARE MERITLESS AS PLAINTIFFS CANNOT PROVE REQUIRED ELEMENTS (Plaintiffs' counts 1, 3, and 8)

To succeed on a business disparagement claim the Plaintiffs must prove "(1) the Defendants published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the Plaintiffs."[108]  Texas considers a business disparagement claim to have the same elements as a defamation claim except that "defamation actions chiefly serve to protect the personal reputation of an injured party, while a business disparagement claim protects economic interests."[109] The Plaintiffs cannot establish the first two elements as a matter of law because Defendants reasonably believed the statements were truthful.

The first element in the cause of action for both defamation and business disparagement is for the Plaintiffs to prove the statements were false.  Based on evidence produced through discovery from Plaintiffs Adams and the recipient of the letter, Inspection Solution Corp., the statements of the association of Plaintiffs Auto P.I. and the original Lemon Busters is true. Plaintiff Adams admitted that a radio advertisement on Austin radio mentioned Auto P.I. was formerly Lemon Busters.[110]  It was not an accident as Adams claims in the letter as evidenced by notes provided by Adams to the radio personalities referring to his company as formerly Lemon Busters.[111]  Moreover, Plaintiffs' website, www.autopi.com, advertised its services as "Home of

---

[107] *See* Declaration of Charles Hanor at ¶40 and 41 and Exhibits ZZ and AAA, Dkt. No. 46,. Exhibit ZZ has been filed under seal.
[108] *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)
[109] Id.
[110] *See* Declaration of Charles Hanor at ¶17 and Exhibit Q, Dkt. No. 46
[111] *See* Declaration of Charles Hanor at ¶42 and Exhibit BBB, Dkt. No. 46. Exhibit BBB has been filed under seal.

the Lemon Busters Inspection" at least as early as January 2007.[112]   The uncontroverted admission of the Plaintiffs combined with its own advertising, is sufficient to show that Defendants' statements are indeed true and as a matter of law the Plaintiffs cannot prove the falsity of statements as required by case law.

Moreover, Plaintiffs cannot show the "actual malice" required to succeed in its claims. Actual malice "requires proof that the Defendants made a statement with knowledge that it was false or with reckless disregard of whether it was true or not."[113]   The Plaintiffs cannot meet this standard because there is not proof the Defendants knew the statement was false or that he had reckless disregard for the truth.   An affidavit setting forth the absence of actual malice is sufficient to carry the movant's summary judgment burden of proof.[114]

## III.   DEFENDANTS' HAVE BEEN DAMAGED BY PLAINTIFFS' ACTIONS

Defendants' are entitled to damages under 15 U.S.C. § 1117 in the amount of Plaintiffs' gross sales.   Under § 1117, Defendants are entitled to recover Plaintiffs' profits.   In calculating the profits, Defendants are "required to prove [plaintiffs'] sales only; [plaintiff] must prove all elements of cost or deduction claimed."   In its discretion, the Court should "enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."   The court should also award Defendants' their reasonable attorneys' fees because they are the prevailing party.

Defendants retained Mr. Jorge Herrera, CPA, who prepared an expert report in this matter.[115]   Plaintiffs have not challenged or disputed Mr. Herrera's expert report, nor have they submitted any counter reports.   Mr. Herrera calculated Plaintiffs' revenue from 2007 through the

---

[112] *See* Declaration of Charles Hanor at ¶43 and Exhibit CCC, Dkt. No. 46.
[113] *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003)
[114] *HBO v. Huckabee*, 995 S.W.2d 152 (Tex. App. Houston 14th Dist. 1998); See Declaration of Michael Dickinson at ¶ 26..
[115] *See* Declaration of Charles Hanor at ¶ 44 and Exhibit EEE, filed herewith under seal.

end of 2008 to be $437,218.00.   Plaintiffs have not proved up any "elements of cost or deduction[s]."   At best the minimum profits of Plaintiffs were $104,957.00. Accordingly, Defendants seek damages in the amount of $437,218.00, but not less than $104,957.00 in minimum profits, plus their reasonable attorneys' fees and costs of $248,668.49.[116]

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully requests that the Court grant this Motion for Summary Judgment and enter judgment in Defendants favor on all pending claims.  Defendants further pray this court award Defendants damages in the amount of $437,218.00, but not less than $104,957.00 in minimum profits, plus their reasonable attorneys' fees and costs of $248,668.49.

Dated:  February 27, 2009                          Respectfully submitted,

                                                   Charles W. Hanor
                                                   Hanor, Lively & Cernyar, PLLC
                                                   750 Rittiman Road
                                                   San Antonio, Texas  78209
                                                   Telephone:  (210) 829-2002
                                                   Facsimile:  (210) 829-2001
                                                   chanor@hanor.com



                                                   _____
                                                   Charles W. Hanor
                                                   Texas Bar No. 08928800

                                                   ATTORNEYS FOR DEFENDANTS

---

[116] *See* Declaration of Charles Hanor at ¶ 45.

### CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2009, a true and correct copy of the foregoing pleading was electronically filed using the CM/ECF system which will send notification of such filing to the following:

MR. DALE LANGLEY
LAW OFFICE DALE LANGLEY
610 WEST LYNN
AUSTIN, TX 78703

I further certify that on February 27, 2009, a true and correct copy of all exhibits filed herewith under seal was served via USPS mail, first class, to the following:

MR. DALE LANGLEY
LAW OFFICE DALE LANGLEY
610 WEST LYNN
AUSTIN, TX 78703

_____
Charles W. Hanor