FILED

2009 APR 30  PM 4: 17

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
            DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| AUTO PREPURCHASE INSPECTIONS | § | |
| L.L.C (d/b/a AUTO P.I. USED CAR | § | |
| INSPECTIONS d/b/a/ LEMON BUSTERS) | § | |
| and JOHN ADAMS, | § | |
|     Plaintiffs | § | |
| | § | |
| VS. | § | A-08-CA-136-JRN |
| | § | |
| MICHAEL DICKINSON and AUTO | § | |
| LEMON DETECTORS of AMERICA, | § | |
| L.L.C. | § | |
|     Defendants | § | |

## ORDER

Before the Court in the above-entitled and styled cause of action are Plaintiffs' Motion for

Partial Summary Judgment (Clerk's Dkt. No. 95); Defendants' Response to Plaintiffs' Partial Motion

for Summary Judgment (Clerk's Dkt. No. 105); and Plaintiffs' Reply in Support of Plaintiffs'

Motion for Summary Judgment (Clerk's Dkt. No. 114).  After an extensive review of the record, the

Court finds that Plaintiffs' Motion should be **DENIED.**

## FACTS

On or about November 2001, Defendant Michael Dickinson initiated operation of his auto

inspection business under the names and marks AUTO LEMON DETECTORS, LEMON

DETECTORS and LEMON LOGO (hereinafter "Defendants' Marks").  Utilizing these Marks,

Defendant Dickinson established a substantial customer base from his office in San Antonio, Texas.

Defendant solidified his association with these Marks with listings in major San Antonio phone books, business pages, online directories, outdoor signs, vehicle signs, brochures, and websites. Defendant Dickinson operates two websites associated with its business: www.autolemondetectors.net and www.autolemondetectors.org.

Plaintiffs established their original business name as Lemon Busters and subsequently incorporated three companies: Lemonbusters, Inc., incorporated February of 1999; Lemon Busters - Austin L.L.C., incorporated July of 1993; and Lemonbusters Development Group L.L.C., incorporated February of 2004. These three companies acquired three trademarks: LEMON BUSTERS (U.S. Reg. No. 1,391,181, now cancelled); LEMON BUSTERS plus LOGO (Reg. No. 2,421,424, now cancelled); and the Lemon Buster LOGO only (Reg. No. 2,421,424, now cancelled). Plaintiff Adams and business partner Alfred Barry Sprague founded these original three Lemon Buster companies.

In July of 2000, Plaintiff consolidated all assets of the Lemon Busters businesses and trademarks into one company: Lemonbusters Development Group, L.L.C.  On July 28, 2000, the assets, names, trademarks, and goodwill of Lemonbusters Development Group, L.L.C. were then sold to Inspection Solution Corp.  During the transition, several individuals who were initially employed by Lemonbusters Development Group, L.L.C. were retained by Inspection Solution Corp. Among the retained employees were Plaintiff Adams and Mr. Michael Wheeler, former Vice President of Operations for Lemonbuster Development Group, L.L.C.  During his employment transition, Plaintiff Adams signed a five-year covenant not to compete with Inspection Solution

Corp. starting July 28, 2000.   Lemonbusters Development Group, L.L.C. dissolved with the State of Texas in December of 2000.

Michael Wheeler left Inspection Solutions and formed Auto PrePurchase Inspections, L.L.C., which was incorporated under Texas law on September 13, 2001.  Auto PrePurchase subsequently changed its name to Auto P.I. Used Car Inspections, L.L.C.  (hereinafter "Auto P.I."). Plaintiff Adams emerged as Auto P.I.'s owner sometime before January 30, 2004.

After discovering Plaintiff Adams' position with Auto P.I., Inspection Solutions sent him a letter on July 26, 2003 alleging Adams violated the five-year covenant not to compete.  In response, Adams stated:  "Auto P.I. Used Car Inspections does not use any part of the name or logo of Lemon Busters in its advertising." Adams also emphasized the fact that Inspection Solution had abandoned use of the LEMON BUSTERS name and lemon logo they had purchased from Adams in 2000. Adams then incorporated a new company, Auto PrePurchase Inspections, L.L.C., on January 26, 2005, but operated this company under the assumed name Auto P.I. Used Car Inspections.

By as early as 2004, Inspection Solutions ceased to own any rights to the original LEMON BUSTERS marks and logos due to abandonment with no intent to resume.  Plaintiff did not obtain assignment of the Inspection Solution Corp.'s names, marks, business or goodwill.  Plaintiff Adams did, however, acquire the LEMON DETECTOR federal registration (Reg. No.  2,823,132) in April 2008 from the Estate of Mr. Daniel B. Koebel.

Koebel originally filed the registration for LEMON DETECTOR on September 27, 2002. Koebel listed his address and place of business in the registration as 114 Ralph Avenue, North Belimore, NY 11710.  Koebel permanently moved to 1326 Hatcher Loop Drive, Brandon, Florida 33511-9370 in 2005.  Plaintiff Adams purchased the registration for LEMON DETECTOR and the

domain name www.lemondetector.com in April of 2008 from Denise Brock (formerly Denise Koebel), Daniel B. Koebel's claimed heir and widow.

After acquiring the Federal Registration for the trademark, Plaintiff Adams began using LEMON DETECTOR in the San Antonio and Austin areas. Plaintiff also started new web sites under the URLs www.lemondetector.com, www.autolemondetectors.com, and www.lemondetectors.com and subsequently placed banners on these sites stating: "Lemon Detector Is Now Auto P.I. Used Car Inspections." Plaintiff also printed online advertisements for "Lemon Detector - Auto P.I." and advertised phone listings under the LEMON DETECTOR name.

On December 17, 2007, Plaintiff filed its Original Petition and Request for Injunctive Relief in Travis County, Texas. Plaintiff originally alleged four causes of action: (1) Trademark Infringement under the Lanham Act; (2) Trademark Dilution under the Lanham Act; (3) Common Law Trademark Infringement; and (4) Injury to Business Reputation or Trademark under Tex. Bus. & Comm. Code § 16.29. *See* Pl. Original Complaint at 8-9. Defendant filed its Notice of Removal on February 25, 2008 (Clerk's Dkt. No. 1).

On August 12, 2008, Judge Sam Sparks signed an order granting an Agreed Preliminary Injunction (Clerk's Dkt. No. 38). This Preliminary Injunction decreed that Plaintiffs shall cease: (1) using the names LEMON DETECTOR, AUTO LEMON DETECTOR, and LEMON BUSTERS in Bexar County and counties adjacent thereto; (2) using the domain names www.lemondetectors.com, www.lemondetector.com, and www.autolemondetector; (3) using any metatags or other devices that divert customers searching on the internet for LEMON DETECTOR to Plaintiffs' Auto PrePurchase Inspections; (4) engaging in advertising or using any designation of origin utilizing any of the three

aforementioned names; and (5) instructing, assisting, aiding, or abetting any other person or business entity engaging in any of the aforementioned activities referred hereto.

In its second and most recent complaint, Plaintiff alleges eight separate causes of action: (1) Injury to Business Reputation, Trade Name or Mark under Texas law; (2) Federal False Advertising and Unfair Competition; (3) Business Disparagement under Texas Law; (4) Federal False Designation of Origin and Unfair Competition; (5) Federal Trademark and Trade Name Dilution; (6) Infringement of Common Law Trademarks and Trade Names; (7) Infringement of Federally Registered Trademark; and (8) Defamation.[1]

In response, Defendants file their Second Amended Answer and Counterclaims, proffering twelve causes of action: (1) Federal Unfair Competition; (2) Texas Trademark Infringement; (3) Common Law Unfair Competition; (4) Common Law Palming Off; (5) Federal False Advertising; (6) Federal Trademark Dilution; (7) Trademark Infringement and Dilution Under Texas Law; (8) Cancellation of Federal Trademark # 2823132; (9) Denial of Federal Trademark Application Serial # 78/973,281 (Lemon Busters Name Only); (10) Denial of Federal Trademark Application Serial # 77/084,520 (Lemon Busters + Logo); (11) Cancellation of Federal Trademark Application Serial # 77/404,810 (Logo Only); and (12) Violation of Lanham Act Sect. 43(d) (Cybersquatting).[2]

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v.*

---

[1] *See* Pl. Second Amended Complaint at 17-29.
[2] *See* Def. Second Amended Answer and Counterclaims at 29-42.

*Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).

The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 110, 122 (1993). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*

## ARGUMENTS AND AUTHORITIES

Plaintiffs' Motion for Partial Summary Judgment seeks denial of Defendants' counter-claims and asserts three arguments in support thereof: (1) Defendants' have no injury, and thus no standing; (2) Defendants' are not entitled to any profits award; and (3) laches and unclear hands bar the

counterclaims.[3] Plaintiffs' claim Defendants fail to "set out specific facts showing a genuine issue."[4]

A.     *Defendants Lack Standing to Bring the Counterclaims*

Standing possesses both constitutional and prudential components.[5] To have constitutional standing,

a counter-plaintiff must demonstrate:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally
> protected interest which is (a) concrete and particularized . . . and (b) actual or
> imminent not conjectural or hypothetical . . . Second, there must be a causal
> connection between the injury and the conduct complained of . . . Third, it must be
> likely, as opposed to merely speculative, that the injury will be redressed by a
> favorable decision.[6]

All three elements are satisfied by the Defendants. Defendants have sufficiently alleged actual

or threatened injury in their Second Amended Answers and Counterclaims, asserting Plaintiffs' use

of Defendants' logos and trademarks in a manner that is likely to cause confusion. This injurious

confusion can be causally connected to Plaintiffs' allegedly unauthorized use of Defendants'

trademarks, and a ruling in favor of the Defendants will redress this purported injury with monetary

or injunctive relief.

Regarding Plaintiffs' claim that Defendants lack prudential standing, there are five factors for

the Court to consider:

> (1) the nature of the [counter] plaintiff's alleged injury:  Is the injury "of a type that
> Congress south to redress . . . ?"; (2) the directness or indirectness of the asserted
> injury; (3) the proximity or remoteness of the party to the alleged injurious conduct;
> (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages
> or complexity in apportioning damages.[7]

After considering the foregoing factors, the Court finds that Defendants have established prudential

---

[3] *See* Pl. Reply in Support of Pl. Motion for Partial Summary Judgment at 1.
[4] Fed. R. Civ. P. 56(e)(2).
[5] *Proctor & Gamble Co. v. Anway Corp.*, 242 F.3d 539, 562 (5th Cir. 2001).
[6] *See Ford v. NYLCARE Health Plans of Gulf Coast, Inc.*, 301 F.3d 3289, 332 (5th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560.
[7] *Protector & Gamble*, 242 F.3d at 562.

standing.  As stated above, Defendants have explained the nature of the alleged injury and plead to

the connection between Plaintiffs' unauthorized use of Defendants' trademarks and the resulting

injury. Additionally, the fact that the Plaintiffs and Defendants are direct competitors further solidifies

the directness of the alleged injury and establishes the proximity of the Parties to the purportedly

injurious conduct.  The Court further finds that the damages claim is not overly speculative or

complex nor is there is a high risk of duplicative damages.

B.      *Accounting of Plaintiffs' Profits Under Defendants' Counterclaims*

Plaintiffs move for summary judgment declaring that Defendants are not entitled to an award

of accounting of Plaintiffs' profits.[8]  As the Court has already held that Defendants have sufficiently

asserted an alleged injury and the Plaintiffs' purported connection to that injury, a genuine issue of

fact remains regarding whether Defendants are entitled to an award of Plaintiffs' profits.

C.      *Laches and Unclean Hands*

Plaintiffs proffer that the Defendants' counterclaims are barred by laches and unclean hands.[9]

In support of their laches argument,[10] Plaintiffs point to a cease and desist letter they received from

the Defendants in 2003.  Plaintiffs conclude that Defendants supposed inaction after penning this

letter bars them from recovery.  Defendants retort that the letter was merely complaining of the

Plaintiffs' false claims and did not raise any issues of trademark infringement.[11]  After viewing the

record in a light favorable to the Defendants, the Court finds that there is a genuine issue fact

---

[8] Pl. Motion for Partial Summary Judgment at 10-13.

[9] Pl. Motion for Partial Summary Judgment at 13.

[10] A laches argument exists when a party knew or should have known of another infringing user.  *Conan Properties, Inc. v. Conan's Pizza, Inc.*, 752 F.2d 145, 148 (5th Cir. 1985); *see also* Def. Resp. to Pl. Motion for Partial Summary Judgment at 8.

[11] Def. Resp. to Pl. Motion for Partial Summary Judgment at 8.

remaining regarding Plaintiffs' laches claim.

Plaintiffs' also postulate that Defendants' should be barred from recovery for unclean hands since "Defendant's website admits that Defendant knows Plaintiff as LEMON BUSTERS, and Defendant published false and disparaging statements about Plaintiff as LEMON BUSTERS." Plaintiffs; provide no further elaboration on this point nor do they cite legal precedent supporting their argument.  Plaintiffs' assertions are therefore conclusory and unpersuasive.


**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **DENIED.**

**IT IS SO ORDERED** this 30 day of April, 2009.


**JAMES R. NOWLIN**
**UNITED STATES DISTRICT JUDGE**